1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT
                               WESTERN DISTRICT OF WASHINGTON
9                                       AT TACOMA

10   JAMIE ANDERSON, JACKIE
     ANDERSON,  XARIA ANDERSON and
11   SHAE ANDERSON,

12                      Plaintiffs,                     CASE NO. C09-5282 KLS

13             v.                                       ORDER

14   KITSAP COUNTY,  KITSAP COUNTY
     SHERIFF'S DEPARTMENT, TIM
15   PETERSON, SERGEANT JIM WHITE,
     and OXFORD SUITES AFFILIATION
16   OF HOTELS,

17                      Defendants.

18

19         The Plaintiffs initially filed their Complaint in Pierce County Superior Court on April 8,

20   2009 and the case was removed to federal court on May 14, 2009.  The undersigned is the trial

21   judge on this matter based on the consent of the parties.  In that regard, the parties are reminded

22   to utilize the initials KLS in all captions rather than RJB.

23         Kitsap County, Kitsap County Sheriff's Department and Sergeant Jim White (County

24

1  Defendants) filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim as well

2  as a Fed. R. Civ. P. 56 summary judgment motion to dismiss.  Dkt. 24.  Except as noted below,

3  the Court is treating the County Defendants' motion as a 12(b)(6) motion.

4      The Defendants filed their Response and in support of their response, submitted a

5  pleading entitled "Plaintiffs' Answer to County's Interrogatories."  Dkt. 27.2.  This document,

6  however, does not set forth the specific questions addressed in the Interrogatories, it just includes

7  answers, so the Court is left to guess as to the question.  The Court also notes that the Plaintiffs

8  do not specifically reference the attachment in their Response (Dkt. 27) except, perhaps, with the

9  following statement appearing at page 7 of their Response relating to their claim of Intentional

10 Infliction of Emotional Distress:  "The facts stated, signed under oath by Mr. and Mrs. Anderson,

11 attest to the contrary."   However, review of the Answers to Interrogatories shows only that Mr.

12 Anderson signed them under oath.  The Court will, however, consider the Answers to

13 Interrogatories when analyzing the Intentional Infliction of Emotional Distress claim.

14              FACTS ALLEGED IN PLAINTIFFS' COMPLAINT[1]

15      Harrison Medical Center made arrangements to pay for the Plaintiffs stay with the

16 Oxford Suites while Mr. Anderson was interviewing for a position at Harrison Medical Center.

17 The arrangement was for Oxford Suites to direct bill Harrison Medical Center for the plaintiffs

18 stay beginning November 4, 2007 through November 8, 2007.  In fact, when Mr. Anderson

19 checked into the hotel he was advised by the clerk that the Medical Center had already paid for

20 his hotel room.

21

22

23

24      [1] For purposes of the 12(b)(6) Motion to Dismiss, the Court accepts, as true, the facts, as alleged in the
Plaintiffs' Complaint.

1    On November 6, 2007 and upon returning to their room around 7:30 p.m. the plaintiffs
2    found a note from the Oxford Suites general manager, Tim Peterson, stating that he wanted to
3    speak with them.  The plaintiffs were not able to enter their hotel room as their key card no
4    longer worked.
5    When Mr. Anderson went to see Mr. Peterson, Mr. Peterson demanded a credit card from
6    Mr. Anderson for payment of the nights the plaintiffs had stayed there as well as for the rest of
7    his stay.  Mr. Peterson did not believe the plaintiff's statement that Harrison Medical was to be
8    direct billed and he also accused Mr. Anderson of a number of things, including defrauding the
9    hotel and that Harrison Medical Center had never heard of him.  Mr. Anderson showed Mr.
10   Peterson e-mail reservation confirmation documents Mr. Anderson had received from Harrison
11   Medical Center.  Mr. Peterson refused to accept this e-mail and called the sheriff.
12   Within minutes of returning to his room, after having received an operable key from Mr.
13   Peterson, Sheriff Deputy Jim White knocked at the plaintiff's hotel door.  Deputy White was
14   immediately rude and aggressive to plaintiff.  He reached into the room and grabbed plaintiff's
15   wrist and twisted his arm around to his back, spinning him around and placing him into
16   handcuffs.
17   Mr. Anderson was taken to the lobby and then to the parking lot where he was forced to
18   endure the taunting of hotel guests.  While in the parking lot other police officers were also
19   pointing and gawking at him as he was placed into the squad car.  Other Caucasian deputies
20   arrived in their squad cars and stood watching the scene as it unfolded.  They were pointing,
21   gawking and drawing the attention of hotel guests and the public to the plaintiffs.
22   Deputy White told Mr. Anderson he was under arrest and that he had an e-mail from Sue
23   Wallace, Recruiting Manager for Harrison Medical Center, stating that she had never heard of
24

1  Mr. Anderson.  Deputy White briefly showed this e-mail to the plaintiff  but would not let him
2  hold it or read it.

3      Deputy White also directed Jackie Anderson, who was 8 ½ months pregnant and caring
4  for their two daughters, ages 2 and 3, to leave the hotel or she too would be arrested.  Mrs.
5  Anderson had to pack their belongings into suitcases and load them into their vehicle.  Deputy
6  White refused to assist Mrs. Anderson with loading her vehicle when requested to do so by Mr.
7  Anderson.

8      Mr. Anderson's wallet and jacket were taken from him and searched without his consent.
9  However, it is unknown as to who took or searched the wallet and jacket.

10      Mr. Anderson was detained in the squad car for two hours during which time he
11  repeatedly asked for an explanation as to why he was being detained.  The only explanation
12  Deputy White gave was that the plaintiff was not who he said he was and that he was defrauding
13  the hotel.  More specifically, Deputy White made the following two statements to the plaintiff:
14  (1) "You are not who you say you are" and (2) "You're defrauding the hotel."

15      Mr. Anderson emotional turmoil was increased by the fear that his wife and children
16  would have no idea as to what became of him.  He asked to speak to his wife repeatedly and
17  someone continuously denied those requests.

18      At the end of the two hours, without apology or explanation, Mr. Anderson's property
19  (wallet and jacket) was returned to him and he was told he was free to go.  Mr. Anderson was
20  later charged with criminal trespass in Kitsap County District Court.  He plead not guilty and the
21  charge was later dismissed for lack of evidence.

22      The entire events caused the plaintiffs, including the two children ages 2 and 3, extreme
23  emotional distress, humiliation, embarrassment and anger.  For Mr. Anderson, having to witness
24

1  the stress and humiliation his wife and children experienced caused him extreme emotional

2  distress.  The Complaint asserts that "Plaintiff" had to seek medical help due to the emotional

3  distress caused by defendants and the Court assumes that reference to plaintiff in the singular is

4  reference to Mr. Anderson.

5       Mr. Anderson did obtain a job at Harrison Medical Center but he asserts that the

6  relationship was damaged from the beginning due to the defendants' actions and that he was

7  released from his position at the end of 2008, which, the court notes, was more than a year

8  following the incident.

9  COUNTY DEFENDANTS' MOTION

10       The County Defendants move to dismiss the following claims:  Claim I: Illegal Detention

11  and Search; Claim II: Violation of Fourth, Fifth and Fourteenth amendment Rights, and Right to

12  Due Process; Claim III: Malicious Prosecution; Claim IV: Defamation; and Claim VII:

13  Intentional Infliction of Emotional Distress.

14       The Plaintiffs' Response (Dkt. 27) was directed only to Claim III: Malicious Prosecution;

15  Claim IV: Defamation, and Claim VII: Intentional Infliction of Emotional Distress.  The Plaintiff

16  did not file any opposition to the County Defendants' motion to dismiss Claims I or II.

17  FAILURE TO STATE A CLAIM

18       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

19  accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial

20  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

21  inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is

22  not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

23  defendant has acted unlawfully. . . . Where a complaint pleads facts that are 'merely consistent

24

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose  to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at p. 1950.

## DISCUSSION

**Claims I and II:**  The County Defendants moved to dismiss these two claims in on the basis that the Complaint failed to provide grounds to support the plaintiffs' entitlement to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007) and *Ashcroft v. Iqbal,* 556 U.S. ____, 129 S.Ct. 1937 (2009).  They asserted that it was unclear what claim was being asserted, the legal basis therefore, or even which of the Plaintiffs is making the claim.

The Plaintiffs did not mention these two claims in their response.  Local Rule 7(b)(2) states that "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."  The Court is considering such failure to even mention the two claims as such an admission and the undersigned hereby GRANTS the County Defendants' motion to dismiss Claims I and II.

**Claim III: Malicious Prosecution.**  Counsel for the County Defendants, Ione George, included in her declaration (Dkt. 25) a certified copy of the criminal complaint that was filed against Mr. Anderson in Kitsap County District Court.  Dkt. 25, Exh. B.  The Court notes that it is undisputed that James Anderson was charged with criminal trespass.  The criminal complaint

1 shows that it was filed in Kitsap County District Court and that it was signed by Deputy

2 Prosecuting Attorney Bonnie M. Martin on May 8, 2008.  Other documents are also included in

3 Exhibit B, including a verified Kitsap County Sheriffs Office Report authored by Deputy Lee

4 Watson.  No explanation, however, has been provided as to the significance of this Report.   It

5 appears that the declaration of Ione George was filed solely with regard to the malicious

6 prosecution claim.

7         Ms. George's declaration also purports to attach, as Exhibit A, a certified copy of the

8 inside of the Kitsap County district Court file "where the court noted its finding of probable

9 cause on July 14, 2008." Dkt. 25.  A review of Exhibit A shows a date of "7-14.08" followed by

10 illegible initials.  Pursuant to Fed. R. Civ. P. 56, an affidavit "must be made on personal

11 knowledge, set out facts that would be admissible in evidence, and show that the affiant is

12 competent to testify on the matters stated."  Ms. George has made no showing with regard to the

13 interpretation she makes as to the significance of the date and initials that are shown on the

14 certified attachment.  The Court declines to conclude from this limited information that a judicial

15 officer made a finding of probable cause.

16         Inasmuch as the Court is only considering the certified copy of the criminal complaint for

17 purposes of the County Defendants' motion, it is not necessary to convert the motion to dismiss

18 to a motion for summary judgment.  The criminal complaint just confirms the fact asserted by

19 the Plaintiffs – that a criminal trespass charge was filed – and it also confirms what is common

20 knowledge, that such a charge can only be brought by a prosecuting attorney.

21         To maintain a common law claim of malicious prosecution, Mr. Anderson must prove the

22 following:  (1) that the prosecution claimed to have been malicious was instituted or continued

23 by the County Defendants; (2) that there was want of probable cause for the institution or

24

1   continuation of the prosecution; (3) that the proceedings were instituted or continued through

2   malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were

3   abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

4   *Gem Trading Company, Inc. v. Cudahy Corporation,* 92 Wn.2d 956, 962-963 (1979);  *Bender v.*

5   *City of Seattle,* 99 Wn. 2d 582, 593 (1983).

6        However, the passage of R.C.W. 4.24.350 removed the common law requirement that

7   Mr. Anderson prove the fourth element –  the proceedings terminated on the merits in favor of

8   the plaintiff, or were abandoned.  R.C.W. 4.24.350 reads as follows:

9            In any action for damages, whether based on tort or contract or otherwise, a
            claim or counterclaim for damages may be litigated in the principal action
10           for malicious prosecution on the ground that the action was instituted with
            knowledge that the same was false, and unfounded, malicious and without
11           probable cause in the filing of such action, or that the same was filed as a
            part of a conspiracy to misuse judicial process by filing an action known
12           to be false and unfounded.

13        It is also true that a prosecuting attorney is the only individual authorized to file a

14   criminal prosecution.  However, that charging decision is necessarily predicated on information

15   provided by law enforcement.  In this case, the Plaintiffs have not presented any competent

16   evidence nor have they alleged any facts to support a conclusion that the criminal trespass charge

17   was "instituted or continued" based on information provided by Sergeant White or any of the

18   other County Defendants.  Nor have they asserted or alleged any facts upon which the Court

19   could conclude that Sergeant White or any of the other County Defendants instituted or

20   continued the proceeding "through malice."  Mr. Anderson merely states in his Complaint that he

21   was charged with criminal trespass.  He has wholly failed to present any facts to support a claim

22   of malicious prosecution by the County Defendants.

23

24

1   The County Defendants' Motion to Dismiss Claim III asserting Malicious Prosecution is

2   hereby GRANTED.

3   **Claim IV: Defamation.**  Mr. Anderson states in his Complaint that "Defendants defamed

4   Mr. Anderson by intentionally making false assertions about him in declarations and oral

5   statements made during the course of their false arrest and malicious prosecution against Mr.

6   Anderson, in an attempt to further their Malicious Prosecution and to besmirch the reputations of

7   Mr. Anderson."  The only facts alleged in his Complaint, as they pertain to the County

8   Defendants and which could be considered statements are the two statements attributed to

9   Sergeant Jim White:  (1) "You are not who you say you are" and (2) "You're defrauding the

10  hotel."  These statements were made to the Plaintiff while he was in the squad car.

11  Under Washington case law, a defamation plaintiff must establish four essential elements

12  to recover:  (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages.  *Mark v.*

13  *Seattle Times,* 96 Wn.2d 473, 486, 635 P.2d 1081 (1981); *Bender v. City of Seattle,* 99 Wn.2d

14  582, 599, 664 P.2d 492 (1983).  Inasmuch as the plaintiff is a private individual, the degree of

15  fault necessary to make out a prima facie case is that of negligence.  *Bender, supra,* at p. 599.

16  Washington recognizes a qualified privilege for police officers in releasing information to

17  the public and press.  This acknowledges the right to inform the public but also clarifies that the

18  right to inform the public does not include a "license to make gratuitous statements concerning

19  the facts of a case or disparaging the character of other parties to an action.  (citations omitted)."

20  *Id.* at p. 601.

21  However, this Court need not even consider the issue of qualified privilege as no facts

22  have been asserted by the Plaintiff to support the conclusion that Sergeant White or any of the

23  other County Defendants "communicated" any disparaging statement to others regarding Mr.

24

1  Anderson.  The two statements attributed to Sergeant White were statements made by Sergeant

2  White to Mr. Anderson in response to Mr. Anderson's inquiry.  There are no facts asserted in the

3  Complaint that suggest there was any "communication" to others much less any facts to suggest

4  that there was any "unprivileged communication" to others.  The mere making of a statement by

5  a defendant to the plaintiff, even if it is completely false and unfounded, does not then create a

6  factual basis for a defamation claim.  Someone else, other than the plaintiff, must have received

7  the communication.

8          The Court notes the suggestion, in Plaintiffs' Response (Dkt. 27) that the "Andersons

9  were defamed by the implications of the way Jamie was arrested and prosecuted for Trespass."

10  The law of defamation does not support a claim by way of "implication."  A statement must be

11  made by the County Defendants and that statement must be communicated to others by the

12  County Defendants.

13          Inasmuch as there are no facts alleged or asserted by the Plaintiff that the County

14  Defendants "communicated" a false statement to anyone other than the Plaintiff, their motion to

15  dismiss Count IV – Defamation is GRANTED.

16          **Claim IV:  Intentional Infliction of Emotional Distress.**

17          A claim for intentional infliction of emotional distress, also referred to as the tort of

18  outrage, requires a showing of:  (1) extreme and outrageous conduct; (2) intentional or reckless

19  infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress.

20  *Rice v. Janovich,* 109 Wn.2d 48, 61, 742 P.2d 1230 (1987).

21          The conduct must be such that it is "so outrageous in character, and so extreme in degree,

22  as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

23

24

1   intolerable in a civilized community." *Grimsby v. Samson,* 85 Wn.2d 52, 59, 530 P.2d 291

2   (1975).

3        When a claim of outrage is made, the trial court must make an initial determination as to

4   whether the alleged conduct was so extreme and outrageous as to warrant a factual determination

5   by the jury. *Jackson v. Peoples Fed. Credit Union,* 25 Wn.App. 81, 84, 604 P.2d 1025 (1979).

6   In conducting its analysis, the court must consider:  (1)  a defendant's position; (2) whether the

7   plaintiff was particularly susceptible to emotional distress, and if the defendants knew this fact;

8   (3) whether the defendants' conduct may have been privileged under the circumstances; (4)

9   whether the degree of emotional distress caused by a party was severe as opposed to mere

10   annoyance, inconvenience, or normal embarrassment; and (5) whether the actor was aware that

11   there was a high probability that his or her conduct would cause severe emotional distress and

12   proceeded in a conscious disregard of it. *Spurrell v. Bloch,* 40 Wn. App. 854, 862, 701 P.2d 529

13   (1985), *rev. denied,* 104Wn.2d 1014 (1985).

14        This case stems from the arrest, by Sergeant White, of Jamie Anderson for what the hotel

15   manager considered to be an attempt to defraud the hotel by failing to pay for use of the hotel

16   room.  The claim for outrage as against the County Defendants is necessarily based on the

17   actions of Sergeant White.  A review of the factual assertions in the Complaint show the

18   Sergeant White was rude and aggressive towards Jamie Anderson when Mr. Anderson was

19   arrested and handcuffed while in his hotel room.  That Sergeant White led Mr. Anderson to his

20   patrol car having to go through the lobby and into the parking lot.  While he was walking to the

21   patrol car Mr. Anderson endured the taunting of hotel guests – but there are no facts alleged as to

22   what constituted the "taunting."  While in the parking lot, other police officers, not parties to this

23

24

1  action, were pointing and gawking at Mr. Anderson as he was placed in the squad car.  Mr.
2  Anderson was detained in the squad car for two hours.
3       Sergeant White ordered Jackie Anderson to leave the hotel or she would be arrested.
4  Sergeant White refused to allow Mr. Anderson to help his wife pack their things, to load their
5  belongings into their vehicle, to care for their two small children during this time or to speak
6  with his wife.  Other non-parties, identified as hotel guests, made disparaging remarks regarding
7  both Mr. and Mrs. Anderson.
8       At the conclusion of the two hours, Mr. Anderson was released and told he was free to
9  go.
10       The Plaintiffs assert, in their complaint, that they all (Jamie Anderson, Jackie Anderson,
11  and their two small children) suffered extreme emotional distress, humiliation, embarrassment,
12  and anger and they assert that the County Defendants acted out of racial and ethnic
13  discrimination and profiling.  The Court notes, however, that these are conclusions without
14  factual support.  Specifically, there are no facts alleged or asserted to support a conclusion that
15  Sergeant White acted out of racial and ethnic discrimination and profiling.  The statement
16  attributed to Sergeant White by Mrs. Anderson clearly reflects a poor choice of words, but
17  without more is insufficient to lead to the conclusion that racial profiling or discrimination
18  played a role in his response to the call from the hotel.
19       The only facts contained in their Complaint regarding extreme emotion distress is that
20  Mr. and Mrs. Anderson had difficulty sleeping at night and concentrating during the day, and
21  that they sought medical help for the emotional distress caused by the County Defendants.
22  However, the plaintiffs again do not assert any facts with regard to the medical help they sought
23
24

1   or received.  They assert no facts relating to their two young children other than the fact they

2   were crying and upset during the time the events were unfolding at the hotel.

3       Mr. Anderson alleges that the incident damaged his employment relationship with

4   Harrison Medical Center but he asserts no facts in his Complaint to support that conclusion.

5   In their Interrogatories Answers (Dkt. 27-2), Mr. Anderson states he felt ostracized to some

6   degree from individuals with whom he worked.  He also alleges frustration and anxiety regarding

7   the charge of Criminal Trespass, but as noted above, the Plaintiffs claim of malicious prosecution

8   cannot proceed against the County Defendants so the difficulties associated with the criminal

9   charge are not attributable to Sergeant White.  Mrs. Anderson asserts that she had to watch her

10  husband being treated shamefully, humiliated and arrested.  She also asserts that Sergeant White

11  referred to her husband as a "Fucking Nigger."

12      As noted above, the Court is required to make an initial determination as to whether there

13  are facts sufficient to allow the claim of Intentional Infliction of Emotional Distress to go to the

14  jury.  The undersigned finds that there are not.

15      Sergeant White is a police officer in Kitsap County, it was due to his position that he

16  responded to situation at the Oxford Suites hotel.  There are no facts asserted or alleged that

17  suggest Sergeant White was aware of anything that would make the plaintiffs particularly

18  susceptible to emotional distress.  In fact, Sergeant White and the plaintiffs did not know each

19  other prior to the incident of November 6, 2007.

20      Neither of the parties addressed the issue of privilege nor shall the undersigned.

21      However, a determining factor is the fact that the plaintiffs have failed to present any

22  facts or assert any facts to support a conclusion that they suffered severe emotional distress.  At

23  the most, they allege difficulty sleeping and concentrating.  That is far short of severe emotional

24

1   distress.  They also present no facts to support the claim of the two young children that they

2   suffered severe emotional distress.

3        Finally, there are no facts asserted or alleged to support the conclusion that Sergeant

4   White was aware that there was a high probability that his conduct would cause severe emotional

5   distress and that he proceeded in conscious disregard of that.

6        In order to survive a motion to dismiss, the plaintiffs must allege fact sufficient to support

7   each element of the claim for intentional infliction of emotional distress.  They have failed to do

8   so.

9        The County Defendants motion to dismiss Claim IV: Intentional Infliction of Emotional

10  Distress is GRANTED.

11                             CONCLUSION

12       The Court GRANTS the County Defendants' motion to dismiss (Dkt. 24)and all claims

13  against Kitsap County, Kitsap County Sheriff's Department and Sergeant Jim White are hereby

14  dismissed.

15       Dated this 1st day of June, 2010.

16

17                                Karen L. Strombom

18                                United States Magistrate Judge

19

20

21

22

23

24